```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MAIRA UFFRE,                                    :
                                                :    06 Civ. 7755 (GWG)
                Plaintiff,
      -v.-                                      :    OPINION AND ORDER

MICHAEL J. ASTRUE,                              :
Commissioner of Social Security,
                                                :

                Defendant.                      :
------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Maira Uffre brings this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for Supplemental Security Income ("SSI"). The parties have consented to this matter being determined by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Commissioner has moved for an order remanding the case to the Commissioner to correct certain legal errors it concedes were made by the administrative law judge ("ALJ"). Uffre has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), and requests remand solely for calculation of benefits. For the reasons stated below, Uffre's motion is denied, and the Commissioner's motion is granted. The case is remanded to the Commissioner to address the deficiencies in the record identified in this order.

I.      BACKGROUND

        A.      Procedural History

Uffre filed for disability benefits in the Fall of 2002.[1] Her application was denied on March 27, 2003. R. 30-33. Uffre appealed the denial, R. 34, and a hearing was held before an ALJ on March 1, 2004. R. 19-28. The ALJ found that Uffre was not entitled to disability benefits, R. 8-18, and the Appeals Council denied her request for review, R. 4-6.

Uffre then filed suit in this Court on October 28, 2004, appealing the Commissioner's decision. See Uffre v. Barnhart, No. 04 Civ. 8482 (RCC) (GWG) (filed Oct. 28, 2004). By stipulation and order, that case was remanded to the Commissioner on April 4, 2005. In compliance with the stipulation and order, the Appeals Council ordered, among other things, that the ALJ request additional evidence and clarification from Uffre's doctor and social worker. R. 340-41. The ALJ held a second hearing on April 7, 2006. R. 361-84. The ALJ again denied Uffre's application on June 1, 2006. R. 302-16. Uffre filed the instant action in this Court on September 27, 2006. See Complaint, filed Sept. 27, 2006 (Docket # 1).

  B.  Evidence Presented at the First Hearing Before the ALJ

    1.  Uffre's Written Statements and Testimony

Uffre's testimony and written statements set forth the following:

Uffre was born on July 4, 1959, R. 29, and came to the United States in 1990, R. 43. She cannot speak English, but can write more than her name in English. R. 51. She has two children. R. 23. In her application for benefits, Uffre wrote:

---

[1] The exact date of Uffre's initial application is not relevant to these motions. The parties disagree as to when this occurred. See Memorandum of Law in Support of the Defendant's Motion for Remand, filed June 27, 2007 (Docket # 14) ("D. Remand Mem."), at 1; Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings, filed July 23, 2007 (Docket # 16) ("P. Mem."), at 1. The administrative record does not elucidate this point. See Administrative Record (annexed to Answer, filed Apr. 18, 2007 (Docket # 7)) ("R."), at 12, 43-45.

> The reason why [I'm] applying for SSI is because I can't go to work because I have several medical problems. I have been treated for depression, anxiety, [and] panic attack[s]. I also have been diagnosed with three fibroid[2] . . . . Also I have difficulty sleeping, palpitations[,] terrible low back pain[,] chest pain[.]

R. 59. According to Uffre's testimony, these conditions first affected her in 1994, and first caused her to be unable to work in 1996. R. 52. She worked as a cashier from 1991 to 1992, as a meat wrapper at a grocery store from 1992 to 1993, and as a home attendant and home maker from 1993 to 1996. R. 53. She was not strong enough to do the daily house chores of a home attendant and frequently got dizzy. R. 52. She "can't walk to [sic] much because [she] get[s] fatigue[d] due to [her] asthma [and] [her] knee hurts due to [her] arthritis." R. 78.

Uffre testified that she was fired from her last job as a home maker in 1996 for signing her own time sheet, despite being authorized to do so by the family she worked for. R. 22. She did not look for another job after that because she "got pregnant . . . . [and] had to be going to the hospital a lot, because [she had] three fibroids in [her] uterus. . . . [a]nd had to keep resting throughout [her] pregnancy." R. 22.

Uffre also testified that she stopped working because of her depression and panic attacks. R. 23. She stated that her depression was caused by abuse she suffered from her first and second husbands. R. 24. The husband who is the father of Uffre's two children comes to her residence every two weeks to visit their children. R. 24-25.

    2.    <u>Medical Reports and Notes</u>

The following is a summary of the records available to the ALJ at the first hearing, which was held in 2004. R. 19.

---

[2] A "fibroid" is a benign, abnormal muscular tissue growth. <u>See</u> <u>Stedman's Medical Dictionary</u> 670, 980, 1189 (27th ed. 2000).

Uffre has been regularly counseled and treated at the Alianza Dominicana, Inc. Children/Adolescent and Family Support Clinic since September 2002. R. 185; see R. 145-205. The clinic records show that Uffre at various times has complained of depression, anxiety, isolation, stress, insomnia, and panic attacks. See R. 148, 151, 153, 156-57, 161. Dr. Francisco Rodriguez and social worker Sonaya Martinez have diagnosed Uffre as having a "major depression d[isorder] recurrent mod[erate] [and a] panic disorder with agoraphobia" on diagnosis Axis I,[3] heart murmur and fibroid on Axis III, isolation and financial problems on Axis IV, and a GAF assessment of 65 on Axis V.[4] See R. 212; see also R. 152, 155, 160, 173, 176, 195. They indicated that Uffre's depression causes her appetite disturbance and weight changes, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking. R. 212. Dr. Rodriguez, however, signed a form – apparently filled out by another

---

[3] These diagnoses reflect use of the multi-axial system of assessment, where each "[axis] . . . refers to a different domain of information that may help the clinician plan treatment and predict outcome." Diagnostic and Statistical Manual of Mental Disorders 25 (4th ed., text revision 2000) ("DSM"). The axes are defined as follows:

| | |
|---|---|
| Axis I | Clinical Disorders |
| | Other Conditions That May Be a Focus of Clinical Attention |
| Axis II | Personality Disorders |
| | Mental Retardation |
| Axis III | General Medical Conditions |
| Axis IV | Psychological and Environmental Problems |
| Axis V | Global Assessment of Functioning |

Id. "Global Assessment of Functioning" ("GAF") is a scale from 0 to 100 used to report "the clinician's judgment of the individual's overall level of functioning." Id. at 30.

[4] A GAF of 61-70 is defined as "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM at 32.

4

clinician – which notes that Uffre did not exhibit any "physical symptoms." R. 195. The clinic records include various notations that Uffre was taking the drugs Paxil, Paxil CR, Celebrex, and Ambien. See R. 161, 164, 169, 170, 204, 212. In a summary report, Dr. Rodriguez and Ms. Martinez indicate that Uffre's ability to function in a workplace environment is "seriously" affected by her condition. R. 214-16, 218. On May 18, 2004, Dr. Rodriguez and Ms. Martinez wrote a letter clarifying their Axis V GAF assessment of 65. R. 275. They stated that the actual number would be "in the range of 55-52 if [Uffre] were placed in a stressful environment, affecting her performance at work. This will have a drastic affect on her psychologically. It is my opinion that . . . Uffre should not be placed in a stressful work environment." R. 275.[5]

The only other submission from a treating physician, Dr. Jose Ortiz, simply states that "Uffre has a history of chronic back pains." R. 134. There is nothing further in the record from Dr. Ortiz.

Dr. Richard King, a psychiatrist, examined Uffre for purposes of her disability application. He diagnosed Uffre with "[a]djustment disorder of adult life, anxious and depressed mild degree" on Axis I, and no diagnosis on Axis II. R. 125. He noted that Uffre was taking the drugs Paxil-CR, Buspar, Motrin, and Celebrex, and used an Albuterol inhaler. R. 124. Dr. King concluded that "the claimant has a satisfactory ability to understand, carry out and remember instructions, and a satisfactory ability to respond appropriately to supervision, co-workers and work pressures in a work setting." R. 125.

---

[5] A GAF of 51-60 is defined as "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM at 32.

Dr. Martha Valdiva, of HS Systems, Inc., also examined Uffre for the purposes of her application. She diagnosed Uffre as follows:

1. Lower back pain, stable with mild functional impairment.
2. Asthma, stable on medication.
3. History of sinusitis, stable and currently asymptomatic.
4. Fibroids, stable on medication.
5. Anemia, stable.
6. History of hiatal hernia, stable.
7. Depression, stable on treatment.

R. 119. Dr. Valdiva concluded that

> [t]he client is able to sit, stand, handle objects, hear and speak. She is moderately impaired in activities requiring walking, lifting, carrying and traveling secondary to her lower back pain, asthma, sinusitis, fibroids and hiatal hernia as well as anemia. She is able to perform light activities. Her assignment should contain asthma precautions. It should also be low stress and close to home.

R. 119.

A "review team" at HS Systems, Inc., also evaluated Uffre. R. 121. Their "Functional Assessment" stated that Uffre could do work involving "light lifting" of less than 20 pounds, "limited pulling, pushing and bending," and could stand or walk less than four "hours at a time." R. 121.

Dr. Herman Berliss, a state agency medical consultant, see D. Remand Mem. at 10, examined Uffre and filled out a form indicating that Uffre's impairment was not severe. R. 132.

C. The ALJ's First Decision

The ALJ found that Uffre has "'severe' impairments including depression, anxiety, back pain, asthma, heart murmur, and fibroid uterus with history of anemia," R. 14, but that Uffre's impairments were "not 'severe' enough [to clearly] meet or medically equal, either singly or in combination, the requirements for any" of the listed impairments, R. 15. In assessing Uffre's

6

residual functional capacity ("RFC"), the ALJ noted that Dr. Rodriguez and Ms. Martinez's conclusion that Uffre's ability to function in a workplace environment is "seriously" affected by her condition, "is not fully supported by the actual treatment notes." R. 13. The ALJ concluded that Uffre "retains the residual functional capacity for low stress, sedentary work without constant sitting," R. 15, and is therefore not disabled, R. 16. The ALJ added that although Uffre "is unable to do a full or broad range of work at any standard exertional level," restricting her functional capacity and "further reduc[ing] the available world of work" for her, "such reduction is minimal." R. 17.

After the Appeals Council denied Uffre's request for review, R. 4-6, Uffre filed the 2004 case appealing the Commissioner's decision. After the case was remanded by stipulation and order, the Appeals Council ordered the ALJ to

> request additional evidence as well as clarification from Francisco Rodriguez, M.
> D. and Soraya Martinez, MSW, of the medical source statement completed in
> March 2004. The Administrative Law Judge may obtain assistance from the
> claimant's representative in securing this information. As needed, the
> Administrative Law Judge may obtain medical expert input. He will give further
> consideration to the medical source opinions, and the testimony of the medical
> expert, if obtained in accordance with relevant regulations and Social Security
> Rulings, and will explain the weight given to opinion evidence. As warranted, the
> Administrative Law Judge may obtain vocational expert testimony . . . .

R. 340.

### D. Evidence Presented at the Second Hearing Before the ALJ

#### 1. Uffre's Testimony

On April 7, 2006, a second hearing was held before the ALJ. R. 361-84. Uffre testified that she could not work because of back pain, depression, and panic attacks. R. 368. She also had a hysterectomy in January 2006. R. 368; cf. R. 285. Uffre has been receiving physical

7

therapy for her back pain, and either walks or takes the bus the twelve blocks to the physical therapist. R. 380-81. She has trouble sleeping through the night. R. 381. Although she takes care of her two children, R. 372-74, doing laundry is difficult for her, R. 381-82, and she has had the assistance of a home attendant at least since she had the hysterectomy, R. 378-79, 382.

    2.    <u>Medical Reports</u>

Information from four additional medical professionals was submitted prior to the ALJ's second decision. Dr. Leonid Bukhman, Uffre's treating physician, diagnosed her with depression, low back pain, gastroesophageal reflux, and chest pain. R. 140. Dr. Bukhman indicated that Uffre's depression made her back pain worse, and that she needed to lie down to relieve the pain. R. 238. He noted that Uffre's conditions are chronic, and prescribed Celebrex, Paxil CR, and physical therapy. R. 238. Dr. Bukhman indicated that Uffre could sit up to two hours continuously for a total of six hours a day, could stand for one hour continuously for a total of three hours in a day, and could walk for one hour continuously for a total of two hours in a day. R. 239. He noted that Uffre could use her hands repetitively for fine manipulation and simple grasping, but not for pushing and pulling, R. 240, and that Uffre cannot use her legs and feet for repetitive movements, R. 240. Dr. Bukhman's records from 2005 diagnose Uffre with fibromyalgia, multiple fibromas of the uterus, migraine headache, panic disorder, atypical chest pain, gastroesophageal reflux and depression, and note that Uffre was scheduled for a hysterectomy. R. 289.

Uffre was referred by Dr. Bukhman to Dr. Barry Rudin to investigate her chest pain. R. 274. Dr. Rudin found that Uffre has atypical chest pain, mild or trivial aortic stenosis, and borderline dilated aortic root. R. 290; <u>see also</u> R. 267, 274. He also noted that Uffre had a

8

"discordant nuclear stress test showing EKG part positive but the scan normal," and he "reschedul[ed] the nuclear stress test." R. 290.

Uffre was also referred for physical therapy by Dr. Bukhman. She attended physical therapy sessions with Max Nguessan from September 2003 through December 2005 to address her lower back pain. R. 243, 296; <u>see</u> <u>also</u> R. 226-27, 231-32, 243-49, 252, 255-57, 260.

A report from Dr. Thomas Gould was submitted indicating that Uffre had esophageal ulcers, bile reflux, and gastritis. R. 293.

E.   The ALJ's Second Decision

The ALJ found that Uffre has "'severe' physical and emotional impairments. . . . [that] significant[ly] limit her ability to do basic work related activities," R. 313, but that those "impairment[s] or combination of impairments [do not] clearly meet[] or medically equal any one of the listed impairments," R. 313. He concluded that Uffre is not disabled as she retains a RFC "for a range of low stress, light work activity without prolonged sitting or continual standing or walking." R. 313. Furthermore, while Uffre "is unable to do a full or broad range of work at any standard exertional level," these added restrictions "have little or no effect on the occupational base . . . remaining for the claimant." R. 315.

In drawing this conclusion, the ALJ relied on Dr. King's report, and stated that Uffre has "much less than a major depressive disorder." R. 308. The ALJ found that while Uffre's impairments could produce the symptoms she and her doctors allege, "the claimant's and other statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible, consistent with her daily activities and responsibilities, or well supported in the written medical evidence now in the record." R. 314. He reiterated his conclusion from his prior

9

decision that actual treatment notes in the record do not support Dr. Rodriguez and Ms. Martinez's diagnoses. R. 309. Instead, he found that the records from Alianza Dominicana support the conclusion of a GAF of 65 and "work not 'in a stressful work environment'" that Rodriguez and Martinez suggested in their letter, rather than the more restrictive limitations suggested in their report. R. 312. The ALJ also rejected the opinion of Dr. Bukhman, stating that "[t]he treatment and treatment records do not come close to supporting the degree of limitation given by Dr. Bukhman's source statement and Dr. Bukhman does not explain why more limitation would be justified for the patient." R. 311. The ALJ also noted that "[p]regnancies and infant care emerged as significant factors in her not seeking further employment." R. 308.

The ALJ acknowledged that he had increased his RFC determination from sedentary work to light work. R. 313. He stated that this change is justified by "the expanded, updated, and further clarified evidence . . . and shown in her day-by-day caring for her household and two children." R. 313.

## II. DISCUSSION

Here, the Commissioner concedes that the ALJ insufficiently developed the record in Uffre's case by (1) failing to "set forth with sufficient specificity" the factual findings supporting his determination of Uffre's RFC, D. Remand Mem. at 19; and (2) rejecting Dr. Rodriguez's opinion without recontacting him as required by 20 C.F.R. § 416.912(e)(1), id. at 19-20. Thus, the Commissioner requests that the case be remanded so that the record can be properly developed. See id.

Uffre asserts that remand to develop the record is inappropriate here, and that her case should be remanded solely for calculation of benefits. Uffre gives two reasons for this position: (1) the case has already been remanded once for the ALJ to develop the record with sufficient specificity and "[t]he evidence 'persuasively' shows plaintiff to be 'disabled' within the meaning of the Social Security Act," P. Mem. at 19; see also id. at 15-18, 19-20; and (2) recontacting Dr. Rodriguez is unnecessary because "the rules for assigning weight to medical source opinions" require that the opinion in the record be given controlling weight, id. at 18.

A.  Whether There is Persuasive Evidence of Disability

Uffre cites a number of cases that she says support her contention that remand for calculation of benefits is required because the Commissioner has already had two opportunities to appropriately evaluate the record in her case. See id. at 12-15. The cases Uffre cites for this proposition, however, do not dictate this result. Some of the cases directed calculation of benefits when "'the reversal [was] based solely on the [Commissioner's] failure to sustain [his] burden of adducing evidence of the claimant's capability of gainful employment.'" Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000) (quoting Balsamo v. Chater, 142 F.3d 75, 82 (2d Cir. 1998)). Here, however, remand would be for the purpose of determining whether Uffre has met her burden of presenting sufficient evidence of disability.

Other cases required a calculation where there was "compelling evidence," Del Pilar v. Sullivan, 756 F. Supp. 117, 121 (S.D.N.Y. 1990), or "persuasive proof" of disability, Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980); McClain v. Barnhart, 299 F. Supp. 2d 309, 324 (S.D.N.Y. 2004), reasoning that remand for further development of the record would serve no purpose.

11

On this point, Uffre argues that the evidence does not support a finding that she is capable of light work, P. Mem. at 17-18, but "persuasively" shows that she is disabled, and thus that a remand solely for calculation of benefits is warranted, id. at 19-20. In fact, the evidence is not so strong that a remand for calculation of benefits is warranted. Uffre points to Dr. Bukhman's opinion that she can lift only five pounds, and has to lie down during the day, R. 238-39, as evidence that she cannot complete a "regular eight hour workday," P. Mem. at 19. The records from Dr. Bukhman, however, do not indicate a cause of Uffre's back pain, and consist almost entirely of in-take notes describing Uffre's complaints, rather than reporting on examinations. See R. 139-42, 237-42, 249-51, 258-66, 286-89. No x-rays or other diagnostic reports describing limitations in movement caused by Uffre's pain have been submitted.

Uffre also cites a letter from her physical therapist, Max Nguessan, that states that Uffre has been receiving physical therapy for lower back pain as further evidence of her disability. P. Mem. at 18; R. 296. While this letter is evidence of Uffre's pain, she does not explain how it demonstrates that she is disabled. P. Mem. at 18. Notably, the report submitted by Dr. Valdivia states that Uffre is only "moderately impaired" due to her back pain. R. 117-19. Additionally, the "review team" at Dr. Valdivia's office found that Uffre could perform activities consistent with light work. R. 121.

In her reply brief, Uffre for the first time asserts that the ALJ's rejection of Dr. Bukhman's opinion is based on a "negative inference," and contends that a negative inference cannot properly form the basis for rejection of a treating physician opinion. Plaintiff's Reply Memorandum of Law, filed Aug. 27, 2007 (Docket # 19) ("P. Reply Mem."), at 3. Uffre cites 20 C.F.R. § 416.927(d)(2), which states that controlling weight will be given to a treating source if

12

it "is not inconsistent with the other substantial evidence in [the] case record," and argues that this means the ALJ must identify a "positive . . . piece of evidence with which the opinion . . . is inconsistent," rather than the "absence of something in the treatment record," P. Reply Mem. at 3. The regulations, however, also require that the treating source opinion be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 416.927(d)(2), and it is here that the ALJ found Dr. Bukhman's opinion to be lacking. Uffre correctly points out that the Second Circuit Court of Appeals has held that an ALJ does not have the expertise to know whether the absence of a certain type of medical evidence precludes a particular diagnosis – for instance, whether the absence of muscle spasms precludes a disabling loss of motion. See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (citing Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 861 (2d Cir. 1990); Balsamo, 142 F.3d at 81). The ALJ, however, did not point to the lack of a certain type of evidence in rejecting Dr. Bukhman's opinion, but found that the weight of the evidence in Dr. Bukhman's reports was insufficient to support Dr. Bukhman's conclusions.

Uffre also argues that there could never be a finding that she is capable of light work because the ALJ, in his first decision, found that she was capable only of sedentary work based on substantially the same evidence. P. Mem. at 17-18. An ALJ making a decision in a case on remand from the Appeals Council, however, is to consider the case de novo when the Appeals Council has vacated the ALJ's previous decision. See Social Security Administration, Office of Disability Adjudication and Review, Hearings, Appeals and Litigation Law Manual, I-2-8-18(A) (available at www.ssa.gov). Here, the Appeals Council vacated the ALJ's first decision. R. 340. Thus, the first decision has no bearing on these proceedings.

13

B.  Whether Treating Physician's Opinion is Given Controlling Weight

Uffre asserts that on remand Dr. Rodriguez's opinion must be given controlling weight, and if his opinion is given controlling weight Uffre must be found disabled. P. Mem. at 18-19. A treating physician's opinion is given controlling weight, however, only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2); see also Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). Here, the ALJ has found that Dr. Rodriguez's opinion is insufficiently supported. Thus, remand is appropriate so that the ALJ can contact Dr. Rodriguez and determine whether his opinion should be given controlling weight.

III.  Proceedings on Remand

On remand, the record shall be developed (1) to set forth with specificity the factual findings supporting any determination of Uffre's residual functional capacity, and (2) for the purpose of re-contacting Dr. Rodriguez as required by 20 C.F.R. § 416.912(e)(1). The ALJ is also free to develop the record in any other way deemed appropriate, provided the development is done promptly upon remand.

Uffre asks the Court to set a time limit on the Commissioner's action upon remand, P. Mem. at 21-22, citing Butts v. Barnhart, 388 F.3d 377 (2d Cir. 2004), amended on reh'g in part by, Butts v. Barnhart, 416 F.3d 101 (2d Cir. 2005). That case, however, involved a claimant who had proved her disability. Butts, 416 F.3d at 103. On rehearing, the Second Circuit stated that a time limit was appropriate because once a claimant is determined to be disabled, it is the Commissioner's burden to show that the claimant is able to work. Id. at 103-04. The Court is unaware of any case that has set a time limit where the claimant had not yet been determined to

14

be disabled.  See generally Wright v. Astrue, 2008 WL 620733, at *4 (E.D.N.Y. Mar. 5, 2008) ("Wright has asked the Court to impose a 120-day deadline for a new hearing and decision; however, because she has not progressed to step five it is improper to impose a deadline").  On remand, however, the Court "expects proceedings to be conducted and resolved expeditiously," id., as befits an agency charged with the important trust of determining entitlement to disability benefits.

Conclusion

Uffre's motion for judgment on the pleadings (Docket # 13) is denied.  The Commissioner's motion for remand (Docket # 15) is granted, and the case is remanded to the Commissioner for further administrative proceedings consistent with this opinion.  The Clerk is requested to enter judgment and to close this case.

Dated: April 18, 2008
        New York, New York

---

GABRIEL W. GORENSTEIN
United States Magistrate Judge


Copies sent to:

Christopher J. Bowes
Center for Disability Advocacy Rights, Inc.
100 Lafayette St., Suite 304
New York, NY 10013

Leslie A. Ramirez-Fisher
Assistant United States Attorney
Southern District of New York
86 Chambers St., 3rd Floor
New York, NY 10007

be disabled. See generally Wright v. Astrue, 2008 WL 620733, at *4 (E.D.N.Y. Mar. 5, 2008) ("Wright has asked the Court to impose a 120-day deadline for a new hearing and decision; however, because she has not progressed to step five it is improper to impose a deadline"). On remand, however, the Court "expects proceedings to be conducted and resolved expeditiously," id., as befits an agency charged with the important trust of determining entitlement to disability benefits.

Conclusion

Uffre's motion for judgment on the pleadings (Docket # 13) is denied. The Commissioner's motion for remand (Docket # 15) is granted, and the case is remanded to the Commissioner for further administrative proceedings consistent with this opinion. The Clerk is requested to enter judgment and to close this case.

Dated: April 18, 2008
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Christopher J. Bowes
Center for Disability Advocacy Rights, Inc.
100 Lafayette St., Suite 304
New York, NY 10013

Leslie A. Ramirez-Fisher
Assistant United States Attorney
Southern District of New York
86 Chambers St., 3rd Floor
New York, NY 10007